The next matter, number 24-1057, Katia Roxana Duarte De Martinez v. Merrick B. Garland. At this time, would counsel for the petitioner please introduce himself on the record to begin? Good morning, Your Honors. Randy Oland from Ms. Duarte De Martinez. Could you just adjust your mic, make it a little closer? Closer. Perfect. Okay. I'm requesting three minutes of rebuttal, please. Okay. Thank you. The petitioner in this case provided over 400 pages of documentation in addition to her and her husband's testimony regarding the myriad, profound disabilities that the qualifying relative, her 10-year-old child, suffers. Reports from medical, educational, psychological, occupational therapy professionals, test results, independent test results showing he has severe impairments, letters from some of the professionals saying that any interruption in the services that he gets now would cause him to suffer regression in all of his abilities, cognitive, social, educational. This evidence established that the child is classified as having an intellectual disability. He's been receiving special education treatment since he was 18 months old. He's had an IEP since he's been three months old. He's in the fifth grade and he is functioning at a kindergarten or first grade level. He receives one-on-one special education treatments in reading, writing, speech, language, math, occupational therapy, independent skills. The child at 10 years old can't cross the street safely, can't tie his shoes, can't clothe himself. This is all in the record, undisputed. Now, the immigration judge virtually ignored every one of those 400-plus pages of documentation and instead distilled the child's medical condition down to four sentences. And on the basis of those four sentences, she determined that the child would not meet the As a threshold matter, Your Honor, the agency is required to consider all relevant evidence. And Wilkinson, the court said that the agency must create an extensive record. This, in this agency decision, they completely ignored all the evidence in this case. That in itself warrants vacating the agency decision. Thank you. Counsel, I understand your argument that you think there should have been far more discussion of the record in this case. Is there a particular part of the record, though, that you think it was critical for the agency to grapple with in making the argument that it overlooked? I would need much more than 15 minutes to do so, Your Honor, but let me answer you this way. First of all, let me just say that in the agency's, the board's, seminal case, the one that created the hardship standard, a matter for Monreal, it said that a strong applicant for cancellation of removal relief might have a child with very serious health issues or disjunctive compelling needs in school. This child has both in abundance. There's no way that this agency decision comports with the Monreal precedent. To answer your question, Judge Bookman, more directly, there is, on the issue of language, which is important in this case, because the child clearly doesn't understand Spanish language, the record is replete with evidence, testimony from his mother and father, reports from the professionals who say that he doesn't understand Spanish and with his disabilities probably will not be able to. His grandparents submitted affidavits saying when they visited with him they couldn't converse with him because he doesn't understand Spanish. His speech language evaluation has him testing as severely impaired in both English and Spanish. Can I just, just so I understand the import of this. As I read the record, am I right in thinking that you're saying the agency in finding that he could attend the school never grappled with the question of whether this particular child could get an education at that school, because it never grappled with the fact that he wouldn't be able to learn the language in which he'd be schooled? Absolutely, you're right. And so even if there, in general, lack of fluency of a child wouldn't be a reason for extreme hardship because presumably the child could learn the new language. This particular child, given this evidence, is not such a child. And the agency never grappled with that. That's exactly right. And so the legal error was treating the fact that the child could go to school as if that showed that the child could get an education, when on this record there's no indication he could. That's exactly right. Let me, if I may, because I can answer your question by completing my thought on your question, Judge Ruckelman. So in ignoring all this evidence of his language deficiency, the immigration judge instead latched on to not even a sentence, a clause in which at one point in the testimony when being asked does he speak Spanish at home, can you speak Spanish with him, his father says he understands some Spanish. Now, if you look at this holistically, all the evidence shows that he doesn't, he'll never be able to speak, doesn't understand the language. But the immigration judge makes a factual finding that he speaks some Spanish based on that little snippet that his father said. But there's never a finding, as I read it, that because he speaks some Spanish, he will be able to learn Spanish and get an education. No, but what the immigration judge did say is that based on that factual finding that he understands some Spanish, he will be okay going to the school in El Salvador. Well, I thought all she said is that all the immigration judge found is that he could attend. He could attend, but it also says... This is helpful to you, if I'm understanding, before you get too hostile to me. I understand, Judge. I understand. I'm understanding your argument. A finding that he can attend is not a finding he can get an education. Absolutely. Although the immigration judge went a little farther than that and said that his development wouldn't be, you know, he wouldn't lose all educational if he had to go under these circumstances. But based on that little snippet, the agency decided that he could attend this school, even though it's taught only in Spanish, even though there's only group services, not the one-on-one services that he receives here. Excuse me. And the services themselves are, quote, nowhere near the services that he receives here in the United States. Even if we treat that and the government is saying that I'm violating Patel by challenging the facts, that's really not what we're doing. Make no mistake, if we could challenge the facts, there are facts that are egregiously wrong in this case. But we're proceeding based on that we're not challenging the fact that he speaks some Spanish. But what we're challenging is to take that, especially in light of all the evidence that he doesn't, he can't speak Spanish, we're challenging the application of that finding to the hardship standard. And it's, frankly, pardon me, it's ludicrous to come to the decision that the agency made with respect to hardship in this case. In Figueroa, this court said that we save for another day the question of whether a reviewing court can look at historical facts, even if the agency didn't rely on them. I think today is the day for this court to do that. This case is, in large part, Justice Gorsuch's nightmare in Patel, where he's stated the obvious that the agency makes mistakes, some mistakes are bigger than others, and many mistakes will result in individuals being removed from the United States on blatant errors that can't be corrected. If we allow, if we don't allow the court to look into these historical facts and get a much more well-rounded view of what is going on in these cases, then we're inviting the agency to do exactly what it did in this case, which is to ignore the facts in order to reach the result that it desires to reach, and it will be protected to a very good degree by Patel's proscription on challenging facts. I think if we allow the court to do that, we should do it today, and if we do allow the court to do that, it will ameliorate or at least help to ameliorate Justice Gorsuch's concerns in Patel. But, counsel, we very clearly can't look at historical facts under Wilkinson and Patel, so what we can look at is whether the agency correctly applied the statutory standard to the facts here. I'm not saying to overrule the facts, but certainly you have to take into consideration these facts. For example, the facts that I've discussed about his language, don't we have to look at those? If I follow the point, we have to apply the standard of Wilkinson to the question of this child, and then you say under that standard, even under the agency's own precedent, if this child has unique characteristics that would prevent the child from learning, that's obviously relevant to whether it's an extreme, unusual hardship. Exactly. Then you're saying, okay, but here the agency said he can learn some Spanish. The question is, in evaluating that, can we also then look at the other record evidence showing all of the reasons why just knowing some Spanish in his case does not show he could learn? I think so. And the issue that you're saying to throw a left open is essentially whether we can look at those other facts, since the agency just didn't mention them. Otherwise, if we don't allow that, the agency can just cherry pick particular findings, and then we have to sort of have a blinkered view in looking at the hardship test. Your Honor, I'm going to let you argue my next case if you don't mind. But you're exactly right, and that is what I'm saying. I think we need to do that. If I can just ask you to sort of laser in. If you had to point out either the BIA decision combined with the IJ's decision, what would you point us to as here's the legal error that you can review in reading this decision? Is there a particular sentence or a case citation? What would you really have us laser in on? Well, as I said, the standard itself that the agency created is in complete conflict with the decision of this case. Just those clause about serious medical issue or compelling educational needs? Yes, Your Honor. There's no way that you can look at the facts of this case and ignore 400 pages of professional opinion as what this child is suffering and come to the conclusion that the agency came to. Sam Dunn, thank you. Thank you, counsel. At this time, would counsel for the respondent please introduce himself on the record to begin? Good morning, Your Honors, and may it please the Court. Michael Heiss on behalf of the respondent, the Attorney General of the United States. The Supreme Court held and this Court agreed that the Court cannot review historical facts with respect to hardship determinations. Petitioner's impassioned argument here, while compelling and obviously deserving of sympathy, is all about facts. What fact are they disputing that was found? Specifically about whether or not this child can speak Spanish or could learn Spanish. They didn't say that. There's a finding he can speak some Spanish and they're not disputing that. They're disputing its import. They're disputing its weight. Is there a finding that he will be able to learn at the school? That was the discussion Your Honor had with my esteemed colleague here. It's about whether or not he can attend and what does it mean to attend.  Is there a finding he can learn while he's there? I would presume that's what that means. Why would you presume that? For one to go to school it would seem pointless to attend without a purpose of learning. That's their point. But that doesn't mean he can't attend. It's a question of weight. This is all a question of does this... I take it you're now agreeing there's no finding that while attending he will be able to take advantage of the educational opportunity. I wouldn't go that far, Your Honor. I think attending school inherently involves learning at school. Otherwise, why attend? Don't go to... That's their point. Right. But again, that's a question of weight. It's a question of what does it mean. There needs to be a finding by the agency. If the agency found two things, he can attend but he can't learn there, I take it you would not say that satisfies Montreal. If there's a finding that he can attend school but doing so would be pointless? Yes. If the agency found that and then found no hardship, that would certainly be a curious case. Okay. So we have a finding here that he can attend. We have a very developed record suggesting he may not be able to learn there, and we have no finding whether he can learn. Why isn't that equally an error that we should remand and have the agency make the finding? Again, this is a question of the weight of the evidence and the totality of the circumstances. And again, Wilkinson is very clear, as Your Honors have all noted, the court cannot review the facts of the case. That's by statute and under Wilkinson, under Patel. And yes, Judge Gorsuch in Patel in dissent expressed concern about the agency making factual errors that the court can't review. However, and it's worth noting that the government in Patel advocated for allowing the court to review such factual errors. The court appointed amicus counsel that argued alternatively. What we have is the result. There's no factual finding. I've heard you identify that they're disputing. No. Well, there are several factual findings. With respect to the learning of the child. With respect to the learning of the child. Subsumed within that finding, their argument is about the severity of his disability. And is there a finding that it wasn't severe? Correct. Where's that finding? It's in the immigration judge's decision and the agency's affirmation, the board's affirmation thereof. It's a discussion of the board. What's the board say? I thought the board said he can speak some Spanish, he can attend the school. Right. Counsel, I actually read the agency's decision differently, which is that they recognize there is a serious intellectual disability because they, and tell me if I'm wrong, but they say that he's in fifth grade but learning at a first grade level, which to me seems, I mean, just on its face a serious intellectual disability. Yes, there's no dispute that it's a serious disability. It's a question of does that rise to exceptional and extremely unusual. That is a legal question, right? Right. But in terms of whether or not substantial evidence applies or abuse of discretion, I'm sure that's something we'll talk about here. And on that note, that's kind of the point. Can I just, before we switch to this, I think the other thing that I've been trying to understand in terms of the legal standard that the agency was applying that did concern me a bit was a citation to a case where they relied on the conclusion that the learning opportunities would be available to him by citing to a case where a child who was gifted would be learning a new language. And I was puzzled by the citation to that case because it does seem to be almost 180 degrees different from the facts here where we have a child who's intellectually disabled. So to cite a case for a gifted child's ability to learn a new language in a case where you have a child who's intellectually disabled with learning difficulties, why isn't that a legal error? Think of it as a Venn diagram, two circles with an overlap. They overlap in terms of the removal, the effect of removal on that individual. How severe is that? The case you're discussing is Alvarado. Arguably this case is on all fours with that case if looked at it in that perspective in terms of what is the hardship to the qualifying relative. In that case it's a hardship to a gifted child who is going to lack access to sufficiently gifted and encouraging education. So their education is going to be inadequate. That is the same argument. No, I think to me it seems like a very different argument. It's the argument that you won't be able to get as good of an education in the country that you'll be removed to as you would here with gifted programs. But it's not a finding. And that's what doesn't bring it up above the usual circumstance, but it's not a finding that you can't learn at all. And I think as Judge Barron and I have been discussing, given the agency's recognition that there are serious intellectual disabilities, which included language, use of language, it's just concerning that the decisions don't seem to grapple with that. And, in fact, they suggest the opposite by citing a situation with a gifted child. I don't believe there's a finding here that he can't learn at all, and that's the question of attending. What does attend mean? Is there a finding that he can learn? There's a finding. Again, I think it's the attend word. Can he attend school? I think that reasonably includes an assumption that he's going to learn there. And attendant with that is, as counsel admits, the father testified, the child understands some Spanish. You see, the issue that just concerns me, and this happens not infrequently, the agency doesn't fully grapple with the critical question, so we don't have a finding to which we defer. If there was a finding that he could learn in a way that would give him an educational opportunity, then under Patel and the like, it would be very hard for them to challenge. That would be historical factual finding. Here we just don't have that actual finding, which raises the concern that the agency didn't quite grapple with the reality of this child's condition, which even you acknowledge is part of the test. So the question is, did the agency do that or not? Why not find out from the source that could tell us, which is the agency? The overarching principle here is, first, that the agency enjoys a presumption of regularity that it did consider all of the evidence, and it doesn't have to craft an ex justice citing every case. It's not that it didn't consider it. What the agency considered all the evidence of or not is no finding. Again, I think the point is, you want us to read the word of Pat in a fairly broad, all-encompassing manner that you'll never find in any dictionary. Attend school. Having attended a lot of school, I went there to learn. I know people I went to school with, people that didn't attend to learn, so maybe that's a fair point, but the majority of us go to attend and learn, and I believe that's a reasonable interpretation. Certainly. The question is whether or not the hardship that his disability is going to cause him rises to the level of exceptional and extremely unusual. To answer that question, we have to know what that hardship is. To answer the question that you pose, we have to know what the dimensions of the hardship may be, and the board isn't telling us, it's simply telling us that he can attend, making no finding as to what that attendance will produce or will amount to. Again, this is getting into historical facts, which the Supreme Court explicitly said this court can't, and the court agreed in Figueroa that this court can't review. It's a question of finding as to what the import of attend means that is subsumed within the finding that this does not rise to the level of an exceptional and extremely unusual hardship, which this court and every court in the country and the board has consistently said is a standard that is supposed to be hard to meet. It imposes a very high bar. Congress explicitly, by statute, limited grants of cancellation and removal to 4,000 per year, whereas approximately right now there's about 250,000 pending cancellation and removal applications. It is a difficult standard to meet, and that is the point. Yes, absolutely, it's a very unfortunate circumstance for a lot of individuals that get removed from this country that have serious illnesses, that have issues that are going to impose hardships, but are those hardships exceptional and extremely unusual? And that is the standard before the court here. And I take it the premise of these statements you're making is that this child will be able to learn at the school. Again, it's a question of what does attend mean. I'm just saying, when you're making those statements, your premise is that the child will be able to learn at the school. I think on the totality of this record, including the father's testimony that the child does understand some Spanish, that those two taken together mean that, yes, he will be able to learn at this school. He will not be completely denied an education. And then you say because it said attend, we have to read the agency to have found that premise to be true. The court doesn't have to do anything, but in terms of what it can and cannot do, it cannot reweigh the facts. That's not helpful to me in this exchange. I know it's not, Your Honor. Because you are saying what we can and cannot do, which is your job. You're not doing anything wrong by doing that. You're saying we have to read attend to mean this child could learn at the school. I hate to say have to, but, again, it's a reasonable interpretation. Well, otherwise vacate. If you're telling us we can't vacate, you must be saying we have to read it. Or you're saying even if we don't read it that way, we still are powerless. So we have to take it that even though he couldn't learn at the school, it's not an extremely unusual hardship. I don't think you're taking that position. Again, the statute explicitly prevents the court from reviewing any judgment relating to the granting of cancellation or removal. And that was the issue in Wilkinson. How does the court get from that whether or not hardship itself is discretionary or just the overall question of cancellation or removal eligibility is discretionary? But the underlying question, which the court unequivocally answered, and, again, this court agreed in Figueroa, the court cannot review facts and whether what it means that the child can attend school is a fact, whether that he can attend school, what the weight of that is a fact. That is a factual question. And that gets back to what Your Honor was just talking about earlier. I believe that was in the first case, or maybe the second, about what substantial evidence review means. First of all, the APA doesn't apply to immigration cases. But in terms of substantial evidence, that applies not just to factual findings but factual findings of legal import. So whether or not someone is eligible for asylum based on having suffered past persecution, whether or not there was past persecution is reviewed for substantial evidence, whether or not that finding supports the asylum finding is a question of substantial evidence. So it's all together. It's not just facts by itself. So it's an appropriate standard that this court and the Supreme Court has consistently applied to fact-driven legal questions. So it was the Monaskey, it was whether or not a habitual residence mattered for, I think it was the human trafficking statute of some kind. U.S. Bank talks about who is an insider under the bankruptcy code. Those questions that are of major legal import are reviewed for substantial evidence. So, again, whether or not the facts here qualify as an exceptional and extremely unusual hardship should be reviewed. Not the facts themselves, but the question itself should be resolved in question of whether or not substantial evidence supports that finding. Counsel, the agency said in Montreal that, and I could be getting the language not quite right, but essentially compelling educational needs could be a basis to satisfy the statutory criteria, correct? Can be, yes. So I guess I'm just trying to understand, and looking back at the VA's decision here, is your argument that that standard is met only if a child can't get an education at all? Limited educational opportunities, language barriers, things like that are all factors for the agency to consider. But, again, the bottom line is always it's a case-by-case basis. No, I understand that. But I'm just asking for your position as the government. Sure. What do you think the legal standard of compelling educational need means? Because it seems that the way we've been discussing it, you're suggesting that if the child can get some sort of education, then it can't be met. So is your position that this compelling educational need will be triggered only if the agency concludes that the child can't get an education at all in the country of removal? A total deprivation of any educational opportunity entirely would certainly lend itself. I can't say for certain. You know I can't. I understand. But is the government's position that that's the only situation in which that's what I'm asking? No. Again, it's case-by-case basis. These are all case-by-case basis. And what we have here, it's a question of this record versus a record where maybe that is the case. The family gets removed to a country that has no schools whatsoever. Or they get removed to a country that's immersed in civil war. So there are no social services available. Again, that's a case-by-case question. It depends on the facts of that case and the facts of this case. The agency did grapple with the record here. The agency did go through the evidence and provide a decision that enables this court to recognize that the agency did at least consider everything and announced its decision in terms that the court can feel assured that the record was properly considered and they had their day in court. But ultimately, the standard is, again, extremely high and difficult to meet. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Petitioner please reintroduce himself on the record? He has a three-minute rebuttal. Randy Olin for the Petitioner. Judge Rick, may I just have a follow-up on your question to my brother and with all respect to my brother about the government's position on what compelling educational needs would be? The government in its brief and here today is equating the Alvarado case, a gifted child who has superior intellectual abilities equating the hardship to that person with the hardship to a severely disabled person with all kinds of disabilities, not just educational. So for what that's worth, I did want to speak for a moment about the idea of deference. The government is arguing that there should be a heightened level of deference now. It strikes me as a very curious argument coming a few months after Loper-Bright, which, as we know, did away with Chevron deference entirely. It seems to me to stand for the proposition that post-Loper that the agencies are entitled to less deference, not more deference, and the Ninth Circuit has recently acknowledged that the Skidmore deference should apply. And under Skidmore, the BIA is only entitled to deference if the reviewing court is convinced of the thoroughness of its consideration, the validity of its reasoning, and the consistency with precedent. Ignoring 400 pages of documentation is not thoroughness. Equating what I just discussed is nonsensical. And it directly conflicts with the agency's decision, which is decision. Recently, and on the hardship standard, recently the Ninth Circuit has embraced Skidmore deference and has said that under Skidmore, the deference given to an agency may be, let me get the quote, may range from great respect to near indifference, depending upon the degree of the agency's care, its consistency, formality, and relative expertness. Under the facts of this case, if we apply Skidmore deference, as I believe we should going forward, the agency would be entitled to little, if any, deference at all. And I believe that that would be the proper standard going forward. I would also like to say, since I have a few seconds left, on Friday afternoon the government submitted a 28, what purports to be a 28J letter, in which I think it made two points. One was, may I complete this thought? One was that law provide did not overrule all the cases that were decided under Chevron. That's pretty obvious that they weren't going to overrule 40 years' worth of cases. But more importantly, it cited some cases where, for its proposition that learning disabilities in and of themselves don't satisfy the hardship standard. Well, there are learning disabilities and there are learning disabilities. And we're not talking about someone with a stutter, which is a learning disability. We're talking about a person with myriad, profound disabilities. I believe this Court should not just vacate this decision, it should reverse it and grant cancellation removal to this family. Thank you very much.